Argued January 24, affirmed February 19; reconsideration denied
March 13, petition for review denied March 26, 1974

HALSEY (No. 383065), *Appellant, v.* PORTLAND
SCHOOL DISTRICT NO. 1 ET AL, *Respondents.*

518 P2d 1349

*Orlin R. Anson,* Salem, argued the cause for appellant. With him on the brief were George N. Gross and Brown, Burt & Swanson, Salem.

*Grant T. Anderson,* Portland, argued the cause for respondents. With him on the brief were Miller, Anderson, Nash, Yerke & Wiener, Portland.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

LANGTRY, J.

Plaintiff appeals from an adverse decree of the circuit court in this suit which he brought as a taxpayer to enjoin the Intermediate Education District (IED) of Multnomah County from transferring certain budgeted funds to School District No. 1 of Multnomah County.

Defendants had demurred to the first complaint filed on grounds that plaintiff had no standing to sue and that a cause of suit was not stated. The demurrer was overruled. Defendants did not cross-appeal on this ruling, but maintain their argument on appeal that plaintiff has no standing, and hence, no cause of suit is stated. Assuming that the record is in shape for us to consider this argument, we decline to do so because the appeal and claim of error by plaintiff attack the trial judge's decision on the merits.

Our review of the record and the applicable law leads to a positive conclusion that the trial court ruled correctly on the merits and that its ruling should be sustained. We adopt the trial court's statement of the case and the rationale of its decision. The trial court's opinion and decision:

"Multnomah County Intermediate Education District (IED) consists of fourteen common and union high school districts including Portland School District No. 1. District No. 1 directs the public school system in the City of Portland.

"Before March 1, 1972, IED, by resolution adopted pursuant to ORS 334.175, budgeted a 'Program for Attendance Services' for the school year 1972-73. In respect to all the constituent dis-

tricts except District No. 1, attendance services were to be provided by IED. They were to be performed by a director and several counselors who would be compensated by and responsible to IED. District No. 1, pursuant to contract with IED, was to provide its own program for attendance services which it was contemplated would be performed by a director, a co-ordinator and eleven counselors employed by the District. The IED resolution provided that in the year 1972-73, District No. 1 would receive $167,628 from IED to defray in part the expense of District No. 1's program.

"On May 23, 1972, voters rejected a proposal to increase District No. 1's tax base. As a result of such rejection it was necessary for the District to curtail or eliminate numerous positions previously budgeted for the ensuing school year. Among the positions eliminated were the attendance co-ordinator and attendance counselors.

"On August 28, 1972, the District Board adopted a resolution directing that during the school year 1972-73 the duties of attendance supervisor (required by ORS 339.040 and 339.055) would be discharged by various high school vice-principals and high school attendance secretaries. In addition, the resolution directed that monies forthcoming from IED for attendance services would be applied to pay part of the salaries of such vice-principals and attendance secretaries.

"On August 31, 1972, the IED Board by resolution approved the action of the District Board. To date IED has paid approximately $100,000 to the District pursuant to such resolution.

"Plaintiff is a citizen taxpayer of Multnomah County, Oregon, and in this suit he seeks to enjoin IED from transferring any portion of the attendance services funds to the District except to provide the services detailed in the 1972-73 budget adopted prior to March 1, 1972 (see pp. 195-197, Ex. A attached to defendant's answer).

"IED proposed a program for attendance services to its constituent districts. The services were to be provided directly to all component districts except District No. 1. District No. 1 was to provide its own program with the understanding IED would contribute the aforementioned sum to the cost thereof. While IED has a direct concern with the format of the system and the level of service it proposed to deliver to the constituent districts other than District No. 1, it does not in fact have a corresponding concern with the format or the level of services District No. 1 chooses to provide in its school system. This conclusion is supported by IED's approval of: (1) the program detailed in its 1972-73 budget; (2) the amended program outlined in the resolution adopted by District No. 1 on August 28, 1972; and (3) the program set forth in its 1973-74 budget (Ex. 3).

"IED's responsibility is to determine that District No. 1 applies IED funds to a proper purpose—in this case, attendance services. In fact, District No. 1 is applying the IED funds to the appropriate purpose, albeit the level of service provided by the District is little if any different or higher than it would be if IED made no contribution. (See ORS 294.450 (1) regarding authority of governing body to transfer appropriation within a given fund.)

"I conclude the relief sought by plaintiff should be denied * * *."

We add but one point, namely, that the trial court's decision harmonizes with the stated purpose undergirding the creation of Intermediate Education Districts:

"It is the purpose * * * [of the IED law] to provide maximum excellence in education and *as nearly equal educational opportunities for all the children of this state as is feasible under optimum local control.* In order to accomplish this purpose the Legislative Assembly intends that the inter-

mediate education districts established under the provisions of ORS 334.010 shall succeed the rural school district and provide professional services and facilities in education *and shall furnish such services and facilities, on a cooperative basis with local districts,* as may further the intent and purposes of * * * [this law]." (Emphasis supplied.) ORS 334.-005.

Affirmed.

THORNTON, J., specially concurring.

I do not necessarily concur in the conclusion reached in the majority opinion that funds exacted by tax levy upon the property of Intermediate Education District (IED) taxpayers and duly budgeted by IED for a specific program may thereafter be expended in the manner which was done here. ORS 294.100. *See, Tuttle v. Beem,* 144 Or 145, 154, 24 P2d 12 (1933); *Glines v. Bain,* 157 Or 358, 72 P2d 33 (1937). Nevertheless I concur in the result for another reason.

The thrust of plaintiff's complaint is that defendants, in eliminating the attendance coordinator and 11 specific attendance counselor positions and transferring those IED funds for use to pay vice principal and secretaries' salaries, are expending IED funds for an unlawful purpose and contrary to ORS 334.175, 339.040, 339.055 and ORS ch 343.

Plaintiff alleges that he has no plain, speedy and adequate remedy at law. Contrary to this allegation, it appears that in ORS 294.100 the legislature has expressly provided a procedure for taxpayers to follow in challenging expenditure of public funds by any public official "for any other or different purpose or purposes than provided by law * * *."

Where plaintiff has not shown why the remedy and

procedures provided by ORS 294.100 are not adequate and have not been exhausted, he cannot be said to be without a plain, speedy and adequate remedy at law. A court of equity has no jurisdiction where there is a plain, speedy and adequate remedy at law. *Holmes v. Graham,* 159 Or 466, 80 P2d 870 (1938).